## Richmond.

## AVIS AND WIFE V. LEE AND ALS.

### May 10th, 1883.

1. FRAUDULENT CONVEYANCES—*Reference to commissioner—Case at bar.*—Suit in Virginia to set aside conveyance for fraud. Grantor and grantees deny fraud and explain the *bona fides* of the transaction. Depositions taken. Circuit court decrees conveyance fraudulent and null as to grantor's creditors. Appeal to district court of appeals. Decree reversed and cause remanded for account of all dealings between grantor and grantees before executing deed, inspection of all grantees' mercantile books, and examination of themselves on oath before commissioner. Grantees notify plaintiffs when and where in the city of B (their home), before commissioner of Virginia, they would submit their books for inspection and themselves for examination on oath. Then and there the books were inspected and grantees cross-examined on oath by counsel for plaintiffs. Commissioner made copies of the books, and certified the copies and grantees' depositions to circuit court. These were laid before commissioner in Virginia. He refused to consider them, but made special statement. Circuit court, inspecting his report, decreed that plaintiffs had failed to make out their charge of fraud, and dismissed their bill with costs.

HELD—(by a majority of the court):

  1. The decree of the district court of appeals reversing the decree annulling the deed for fraud was final as far as it went.
  2. Appellees might have appealed to this court, but did not.
  3. In its directions for account of dealings, inspection of books and examination on oath of grantees, its purpose was to get at the truth; and the inspection and examination in the city of B answered for that purpose, as well as the like inspection and examination in Virginia could have done. And the circuit court needed not to compel the books and the grantees to be brought to this state for inspection and examination.

HELD—(by Richardson J. and Lewis P.):

  In pursuance of directions of district court of appeals, circuit

court should have required not only the account of all dealings between grantor and grantees before execution of deed, and the inspection of all mercantile books of grantees, and the examination on oath of grantees themselves, to have been taken and made before its own commissioner in Virginia, but should also have required the commissioner to ascertain whether the deed was intended by the parties thereto to be an absolute conveyance, or only a mortgage.

Appeal from decree of circuit court of Lancaster county rendered 28th January, 1875, in a chancery cause wherein James L. Avis and Sophia V. his wife, and others, were complainants, and William K. Lee and Mary A. his wife, Arthur H. Lee, Warren Eubank and William Henderson were home, and Henry Duvall and George L. Iglehart, merchants and partners trading in the name of Duvall & Iglehart, in the city of Baltimore, were absent defendants. The object of the suit was to vacate a conveyance made by Wm. K. Lee and wife, on 7th December, 1865, to Duvall & Iglehart, of all his land, stock and furniture in Lancaster county, Virginia, in consideration of $6,000, expressed on the face of the lease to have been paid, of all which property, however, grantor retained possession. under a parole lease, on the ground that the same was made with intent to defraud the plaintiffs and others who are creditors of said grantor.

By its last decree the circuit court dismissed the plaintiffs' bill with costs, and they obtained from one of the judges of this court an appeal.

The opinion states the facts and the proceedings sufficiently for the comprehension of the points decided.

*R. T. L. Beale,* and *John S. Wise,* for the appellants.

The court mistook the law as applicable to the facts of the record. The principle so long maintained in Virginia, that possession inconsistent with the terms of the deed was fraud *per se,* was modified in *Davis* v. *Turner* only to the extent of permit-

ting that rule of evidence to be met by explanations showing *bona fides.* The *onus probandi* was thrown upon the defendants, and unless the proofs adduced show perfect good faith, the conclusion of fraud results as conclusively now as it did ever with such proofs prior to *Davis* v. *Turner,* 4th Gratt. 422; *Curd* v. *Miller's Ex'or,* 7th Gratt. 185.

The opportunity allowed Duval and Iglehart to do this by decree of appellate court, they failed to embrace. And apart from the answers, there is no explanation of the alleged indebtedness of Lee; on the contrary, much impugning the truth of its existence.

And secondly, independently of the principles of fraud *per se,* the court erred in dismissing the bill as not sustained by proofs. Every ear-mark of fraud actual, relied upon in the books, is present in this record. The insolvency of vendor, the secrecy of the negotiation, the sweeping character of the sale, including everything, even the bed Lee slept upon, the continued possession and actual sale of portions of the property conveyed by Lee and wife, the extreme improbability of a credit of $4,000 upon a single note accorded to one in Lee's circumstances by a mercantile firm, and the utter failure to show for what this large sum was due.

It is submitted with some confidence that these facts do show a feigned sale, which requires something more than an answer denying fraud to be successfully repelled. Certain it is, that a former circuit court and a district appellate court so thought, as is shown by the record. See 1st Smith's Lead. Cas.—*Twyne's Case*—for a review of authorities upon this whole subject.

*W. W. Gordon,* and *Robert Mayo,* for the appellees.

LACY, J., delivered the opinion of the court.

On the 26th day of January, 1866, the appellant, Sophia V. Mitchell, since intermarried with the appellant, James L. Avis,

filed her bill in the circuit court of Lancaster county, to set aside as fraudulent a deed from the appellee, William K. Lee and wife, to the appellees, Duval and Iglehart, which deed was made on the 7th day of December, 1865. The land sold under the said deed, having been leased by the vendee to the vendor. The depositions of seventeen witnesses were taken *pro* and *con*, and the circuit court decreed on the 5th day of November, 1867, the deed to be fraudulent, and ordered the land to be sold to pay the plaintiffs' debt. From this decree the defendants appealed to the district court of appeals at Fredericksburg, Virginia, a tribunal then existing under the laws of this state. On the 13th day of July, 1868, the district court of appeals reversed the circuit court, and remanded the cause. From this order reversing the circuit court, the plaintiffs were entitled to an appeal to this court as a matter of right, but no appeal was taken, and that decree, so far as it goes, is final in this cause. That court said the circuit court erred in decreeing that the fraud charged in the bill had been established by the evidence, and instead of doing so, ought to have directed a commissioner of the court to take an account of all the dealings between the vendor and vendees, before the execution of the deed complained of, and ascertain the amount due by the former to the latter, and inquire into and state all the circumstances connected with the execution of the said deed and the consideration thereof, &c.; and ought to have directed the vendees to produce before a commissioner, when required by him, all their mercantile books containing an account of any of the said dealings, and submit to be examined, on oath by him. In pursuance of this decree of the said district court, the circuit court of Lancaster, on the 27th day of May, 1870, decreed accordingly.

The vendees gave notice to the plaintiffs that on the 1st day of November, 1870, at a place designated in the city of Baltimore (the place of their residence), they would exhibit all their books and accounts bearing on the subject before a commissioner of Virginia in the said city of Baltimore, and submit them-

selves to be examined on oath. On the day named, and at the place designated, the said books were exhibited before the said commissioner, and the vendees did submit themselves to be examined on oath, and were cross-examined at length by counsel for some of the creditors of' the vendor in the deed complained of, and the said books were copied and certified by the said commissioner, the certificate declaring the copies to be accurate and full; and these copies and certified abstracts were laid before the commissioner of the circuit court of Lancaster. The said commissioner refused to consider the said certified copies, but made special statement of same, as required by the appellees. Upon the coming in of this report the circuit court, upon inspection of the same, decreed in favor of the defendant, declaring that the plaintiffs had entirely failed to make out the charge of fraud, and dismissed their bill. From this decree the appellants appealed to this court.

We are of opinion that the circuit court did not err in thus dismissing the plaintiff's bill.

Upon inspection of the books so copied, the transactions, running back for many years anterior to the beginning of the late war, appear to be usual, and such as might be reasonable and possible, and indeed probable, between the parties, and they are proved to be accurate and genuine.

The sole question in this case then, is, whether the circuit court should not have compelled the original books to be brought to this state for an inspection by its commissioner. How could this be at all necessary, or indeed, proper? The books were all exhibited in the city of Baltimore before a commissioner of Virginia there, exhibited to the parties themselves and their counsel, and copied in full and certified, and the parties examined on oath and cross-examined. What more could have been done in this state than was done in that state? What good could come on the one hand by bringing the original books, or what harm did come on the other hand by not bringing them?

It is, however, contended that the district court so ordered.

We do not so understand the decree of that court. The obvious intention and aim of the decree of that court was to get at the truth between the parties, upon an examination of the mercantile books of these vendees. These books have been examined, copied and certified; and exhibited to the court thus copied and certified, and to the parties and their counsel in the original; and it would have been altogether useless and fruitless to have demanded more. The circuit court did not err in so deciding, and we are of opinion to affirm the said decree of the circuit court.

*Fauntleroy* and *Hinton J.'s,* concurred in the opinion of Lacy, J.

*Lewis, P.,* and *Richardson, J.,* dissented.

RICHARDSON, J., *dissenting,* said:

This suit originated in 1866, upon a bill filed in the circuit court of Lancaster county by Sophia V. Mitchell, an infant, by Thomas S. Dunaway, her guardian and next friend, who sued also in his own right, and both of whom sued as well for themselves as on behalf of Marion J. and Mary E. Eustace, also infants, by Addison Hall, who claimed in his own right and as their guardian and next friend, and also on behalf of William H. Cuwell, against William K. Lee and others.

The object of the suit was to set aside and annul, as fraudulent and void, a certain deed made by the said William K. Lee to the appellees, Duvall and Iglehart, of the city of Baltimore, in the state of Maryland, dated the 7th day of December, 1865, by which said William K. Lee conveyed to said Duvall and Iglehart, all his estate, real and personal, of every description, including even household and kitchen furniture.

The real estate thus conveyed consisted of a valuable tract of land containing two hundred and forty acres, fronting on the

Chesapeake bay, in the county of Lancaster, on which were comfortable improvements, &c. The personal property conveyed, so far as specified, consisted of six horses and mules, twenty-two head of cattle, seventeen sheep, fifty hogs, and all the farming implements, and household and kitchen furniture. The consideration expressed on the face of said deed is six thousand dollars, the receipt of which is therein acknowledged as having been paid in cash.

The plaintiffs below (the appellants here) are creditors of said William K. Lee, who at the date of said deed was largely involved in debt to the appellants and others. It is alleged in the bill, and nowhere denied, that a large portion of said indebtedness was to the infant plaintiff, said Sophia V. Mitchell, and evidenced by bonds executed by said W. K. Lee to her guardian, and constituting part of her personal estate.

In this state of circumstances William K. Lee, in the county of Lancaster, in Virginia, had prepared the deed aforesaid, and together with his wife, Mary A., executed the same; and on the 11th day of said month (December) the same was acknowledged and recorded in the clerk's office of Lancaster county, the officer taking the acknowledgment certifying that the said Mary A. Lee had consented to execute the same, but not willingly. When the deed had been thus executed said Lee took his wife to Lancaster courthouse, where the acknowledgment was made and the deed admitted to record. At this time the grantees (Duval and Iglehart) were absent. In fact, it does not appear that they, or either of them, either before or since said conveyance, ever saw the 'land or other property conveyed to them by said deed. Most, if not all, the neighbors of Lee seem to have been examined as witnesses, and their depositions appear in the record. None of them remember ever to have seen or heard of either Duval or Iglehart, in person or by agent, being on the premises. The record discloses the fact that no actual possession was ever given; but that Lee, the grantor, remained in possession, and, to all appearances, managed and controlled the property as he

had theretofore done. He hired labor, cultivated the farm, disposed of the farm products in his own name. It appears, too, that this deed was made at a time when said Lee was urged to pay his just debts, especially those due the said infants; that he made declarations evincing a purpose not to pay them, because Confederate money had been offered by him therefor and refused. And, above all, it appears that this debtor, who, if not then absolutely insolvent, made himself so by the deed in question, by parting with property which, from the proof in the cause, must have been worth not less than nine or ten thousand dollars, for six thousand.

It is not strange then, in view of these most suspicious circircumstances that the appellants, upon well settled principles, filed their bill at once, charging that this deed was false and fraudulent in design, and made with intent to hinder, delay, and defraud the creditors of said Lee. Nor is it strange that the circuit court of Lancaster, after hearing the proofs, when the matter was yet fresh, should have decreed said deed, as it did, to be fraudulent and void.

It is proper to state that William K. Lee, the grantor, and also Duvall and Iglehart, the grantees, filed their separate answers, each denying the fraud charged as to them, respectively, and asserting the *bona fides* of the transaction. William K. Lee in his answer says, that for many years he had dealings with the said Duval and Iglehart as grocers and commission merchants; that he not only bought of them goods in their line of trade, but was indebted to them frequently for advances to him of money; that up to the 1st day of July, 1858, he was justly indebted to the said Duval and Iglehart in the sum of $4,000, and on that day he gave them his note for that amount, with interest from date; that on the 20th August, 1859, he paid said Duval and Iglehart $500 in part of said notes; that the balance due on said note continued due to said Duval and Iglehart until the month of November, 1859, when he visited Baltimore, and Duval and Iglehart called on him for payment or

security for the balance due on said note; that he responded
that he had nothing out of which he could comply with their
demand, except the land on which he lived, and the· stock, &c.
on it, and offered, to satisfy them, to sell said property to them
at $8,000, the balance after deducting the amount of said note,
to be paid him in cash; that Duval and Iglehart refused to give
him that amount, and offered him $6,000, which he says, he
finally accepted; that it was agreed between him and Duval and
Iglehart, that he should execute and record a deed to them for
said property, and that when that was done the said note should
be surrendered, and the balance which might be due him should
be paid in cash by them; that accordingly he did execute and
deliver to the clerk of Lancaster county said deed, and that re-
spondent afterwards went to Baltimore, when the transaction
was closed on the 14th day of December, 1865, when Duval and
Iglehart surrendered said note, and paid him the balance,
$904.25. And he exhibits said note with and as part of his
answer.

And in his answer, said Lee admits that he still lived on said
land, and has possession, but as agent of Duval and Iglehart.
And he says that at the time of said sale Duval and Iglehart
gave him verbal instructions as to the management and con-
trol of said property; that after his return to Lancaster in
December, 1865, he received from them a letter dated 22d De-
cember, 1865, giving him directions and authority to manage
said property. The letter referred to is in the record, and gives
to William K. Lee very general powers to act in his own name
and as for himself—powers in fact not altogether consistent
with the usual course of prudent business men.

In his answer, William K. Lee also admits that Duvall and
Iglehart, at the time of the transaction, did say their only in-
ducement and object in making said purchase, was to secure the
debt due them, and that he, William K. Lee, should have the
right, if able, to repurchase. In their answer, Duvall and Igle-
hart say the same, but take care to add, that in case of re-

purchase, William K. Lee was to pay what they might think the property worth. Here is a discrepancy which, in view of the gross inadequacy of consideration, is very important, and serves to stamp the transaction with an additional badge of fraud. It tends strongly to show that Duvall and Iglehart valued the property at more than $6,000, and intended to have its true value. It moreover tends strongly to show, that Duvall and Iglehart were aiding William K. Lee to cover up and screen his property from the just demands of his *bona fide* creditors. But, however this may be, there is, whether you take the statement of William K. Lee or that of Duvall and Iglehart, the unavoidable conclusion that the conveyance from Lee to Duvall and Iglehart, does not, on its face, contain the whole agreement and understanding between the parties; that the true agreement was that of a conditional sale or mortgage with the right, without day, of redemption by the grantor. In this view, which is absolutely unavoidable, even though it be true that Duvall and Iglehart were *bona fide* creditors to the extent claimed by them, yet, inasmuch as the property conveyed to them was worth greatly more than their debt, the same is liable to the claims of the creditors of William K. Lee at large, including said Duvall and Iglehart, according to their priorities, if any.

I have thus far addressed myself to that view of the case involving the merits of the question. This has been done not with a view of determining the case upon its merits, but to demonstrate the just necessity for reversing the court below as the only means by which the very right of the case may be arrived at, and the dignity and integrity of proper adjudication preserved.

A brief review of the case will bring sharply to view the necessity of vindicating the right just stated. Upon the state of facts hereinbefore referred to, the circuit court of Lancaster county, on the 5th day of November, 1867, when the transaction in question was fresh, pronounced its decree, declaring that the said deed from William K. Lee to Duvall and Iglehart was

made with the intent to hinder, delay and defraud the creditors of the said William K. Lee in the recovery of their just demands, and is, therefor, null and void.

From the decree thus rendered an appeal was taken to the district court of appeals at Fredericksburg. When the case was heard in that court a decree was rendered, the body and spirit of which is in these words—that is, after stating that the court below had decreed the conveyance in question null and void, said—"and instead of doing so ought to have directed a commissioner of the court to take an account of all the dealings between the said Wm. K. Lee and Duval and Iglehart prior to the execution of said deed, and ascertain the amount then due by the former to the latter, and enquire into and state *all* the circumstances connected with the execution of the said deed, and the consideration thereof, and any understanding or agreement between the said parties in regard to the said deed, or the property thereby conveyed, or any part thereof, and make report to the court; and ought to have directed the said Duval and Iglehart to produce before the commissioner, when required by him, *all their mercantile books*, containing an account of any of the said dealings, and submit to be examined on oath concerning any of the matters aforesaid, if and whenever required by him, and on the coming in of said report the said court ought to have decided the said question, as well upon the said report and any exception taken thereto as upon the pleadings and proofs in the cause, including any proofs which, after said directions and before the time of such decision, may have been taken and filed in the cause. If such decision had been that said deed is fraudulent and void as to the said creditors, then the court ought to have subjected the property conveyed by the deed to the payment of the claims of such of the said creditors as are entitled to the benefit of this suit, according to their respective rights and priorities. But if such decision had been that the said deed is not fraudulent and void as to the said creditors, then the court ought to have decided whether the said deed was intended by the par-

ties to be absolute and unconditional, or was accompanied by an agreement or understanding between them, that the said Wm. K. Lee should have the privilege of redeeming the property conveyed by repayment of the consideration, or purchase money; and if such decision had been that the said deed was intended by the parties to be absolute and unconditional, then the court ought to have dismissed the bill with costs; but if such decision had been that the understanding between the said parties that the said Wm. K. Lee should have the privilege of redemption aforesaid, then the court ought to have subjected the property thereby conveyed, first, to the debt due by the said Wm. K. Lee to the said Duval and Iglehart at the times of the execution of said deed, with interest thereon until payment, and also of any money paid by them to him in consideration of the execution of the said deed, with interest thereon till payment, and then to the payment of the claims of such of the said creditors as are entitled to the benefits of this suit, according to their respective rights and priorities. Therefore, it is decreed and ordered, that so much of the said decree as is inconsistent with the foregoing opinion be reversed and annulled, and the remainder thereof affirmed," &c.

This decree of the district court speaks for itself, and in terms of unmistakable plainness, but partially reverses the decree of the circuit court of Lancaster, and that only, because the latter had prematurely acted without the books, and *all the books* of Duvall and Iglehart containing an account of any of the dealings between William K. Lee and them, and without enquiring into and ascertaining whether said transaction was a conditional sale, and decreeing accordingly. The decree lays stress upon the right of redemption spoken of and admitted in the answers of Duvall and Iglehart, and William K. Lee, respectively. It is a matter of vital importance to the creditors, especially the infant plaintiffs, for there is no escaping the fact that the property conveyed was worth nearly double the consideration mentioned in the deed. Hence the particularity of the district court

in directing that if there was an agreement for the redemption, then, if and to the extent that Duval and Iglehart were *bona fide* creditors of William K. Lee, the property should be subjected to the claims of Lee's creditors, after first satisfying such claim of Duvall and Iglehart.

Yet when the case was sent back to the circuit court of Lancaster, all these very specific directions were, in effect, disregarded; for in the decree rendered by said lower court and now complained of, no notice of any of them is made—the decree only declaring that the plaintiffs had failed to sustain the charge of fraud made in the bill.

Let us briefly review the proceedings had after the case went back to the circuit court of Lancaster.

By decree of said court made on the 6th day of November, 1868, James Simmonds, its commissioner, was directed to take the account required, and said Duval and Iglehart were required to produce *all their books*, and to submit to be examined on oath by said commissioner; but said decree did not, as it should have done, pursue all the directions contained in the said decree of the district court; it did not direct enquiry and report as to the question of redemption aforesaid. The commissioner reports that under the decree of the circuit court, he fixed upon the 10th day of March, 1869, at Lancaster courthouse, to take said account, and gave notice to the parties; that they did not attend; that he continued the same to Wednesday the 24th of said month, and the parties did not attend, except the attorney for the plaintiff, and he again continued until the 27th of said month, when he took the deposition of one witness; and that notice was renewed and executed upon the parties of each of these continuances, and that Duvall and Iglehart refused to obey the summons, and, therefore, he (the commissioner) had been unable to carry the decree into effect.

On the 27th day of May, 1870, a decree was entered by the said circuit court, recommitting said report to the commissioner.

This was done upon the motion of the plaintiffs, whose rights then depended upon the information to be derived mainly from the books of Duvall and Iglehart. In this second decree the said circuit court repeated its former directions, with the declaration that, upon notice to Duvall and Iglehart of what they are required to do, and report, of their non-compliance, by the commissioner, the court would proceed to decree against them at the next hearing of the cause.

It is a very significant fact, just here, that the decree last named recommitting said report has never in any way been attempted to be executed; for on the 20th day of September thereafter (1870) said commissioner reports, as supplemental to his former report, which had been followed by a decree of recommittal, that he on that day (September 20th, 1870), upon the petition of Duval and Iglehart, reopened the case for a further hearing of same, and issued notices to the complainants, which were returned executed; that on that day Samuel Gresham, attorney for the plaintiffs, and Robert Mayo, attorney for the defendants, appeared; but that neither Duval nor Iglehart appeared, nor did they produce their books for examination; but, by their counsel, presented a paper purporting to be depositions taken in the city of Baltimore, and extracts from their mercantile books; that said commissioner, regarding said course as not in compliance with the requirements of the decrees of the 6th day of November, 1868, and the 28th day of May, 1870, rejected the said paper; that thereupon the defendants, by their counsel, drew up a special statement, which they required said commissioner to make, and which he returned (marked W).

This special statement appears in the record. It is specious, but by no means satisfactory. It disclaims any disrespect to the orders of the court, although these defendants (Duval and Iglehart) had, after repeated notices from said commissioner, contumaciously stood out in defiance of said orders. It discloses the fact that they had, while thus in contempt, undertaken upon

notice to the plaintiffs, to take in Baltimore such proof as suited them, and that after the decree of recommittal they bring this, not in person, but by counsel, and petition the commissioner and induce him to undertake to reopen a report which had been rejected by decree. This the commissioner had no right to do; and it must be presumed that he only did so upon the belief that Duval and Iglehart desired to purge themselves of their contempt by then fully complying with the court's decrees.

But they did not do so; but, instead, offered certain papers purporting to be the depositions of certain witnesses to whom they had shown, not all their books, but their ledger only. These papers were refused, and most properly so, by the commissioner. Then these so-called depositions are attempted to be injected into the case through the medium of a special written statement by counsel, in which it is assumed that, practically, all the purposes of the decrees aforesaid are served thereby. Such is not the fact. If in the early progress of the cause, before the first decree against them, this pretended evidence had been taken, though showing only what the ledger contained, and, therefore, not the best proof, it might have been treated as a mere inadvertence on the part of Duval and Iglehart. But, after the special directions of the district court and circuit court of Lancaster, after the decree of the latter requiring a copy thereof to be served on Duval and Iglehart, with notification to them that non-compliance on their part would be treated and taken as sufficient reason for decreeing against them, it was too late to claim that to see all their books was·unnecessary. Not only could they not be mistaken in this, if they had looked only to said decrees, but in the taking of said pretended evidence in Baltimore, their attention had been called especially to the importance of showing all their books, &c. Their witness, to whom they only showed their ledger, says that no day book containing the items of accounts against William K. Lee was shown him; that no set of books is complete without such a

book; that the only item of charge therein against William K. Lee was this, "April 2d, '58, to sundries, cash, &c., $4,000." That Duval and Iglehart did not then, under the circumstances, produce their day book with the items, is a circumstance of such significance that it becomes more than ever important, in behalf of justice and fair dealing, that all the books be seen and the transactions thorougly scrutinized. To see all of said books is a right finally adjudicated in favor of the appellants. Such being their right, it was wrong to decree against them when full proof was in reach. For these reasons, I am of opinion the decree below should be reversed.

DECREE AFFIRMED.